**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NEAL BARMACK, ) | Case No. |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT FOR** |
| vs. ) | **VIOLATION OF THE** |
| ) | **FEDERAL SECURITIES LAWS** |
| A. SCHULMAN, INC., EUGENE R. ) | |
| ALLSPACH, DAVID G. BIRNEY, CAROL ) | JURY TRIAL DEMANDED |
| S. EICHER, JOSEPH M. GINGO, LEE D. ) | |
| MEYER, JAMES A. MITAROTONDA, ) | |
| ERNEST J. NOVAK, JR., KATHLEEN M. ) | |
| OSWALD, and ALLEN A. SPIZZO, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Neal Barmack ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of A. Schulman, Inc., ("A. Schulman" or the "Company") brings this action against the Company and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §§ 240.14a-9, 244.100, & 229.1015(b)(4), arising out of the definitive merger agreement between and among A. Schulman, LyondellBasell Industries N.V. ("LyondellBasell"), and LYB Americas Holdco Inc. ("Merger Sub") (the "Merger Agreement").

2. On February 15, 2018, the A. Schulman and LyondellBasell issued a joint press release announcing that the Board had caused the Company to enter into the Merger Agreement. Pursuant to the Merger Agreement, each share of Company common stock will be converted into the right to receive $42.00 in cash and one contingent value right ("CVR") (the "Merger Consideration"). The CVR will entitle the holder to a share of proceeds from ongoing litigation relating to previous acquisitions by A. Schulman. Without taking into account the value of the CVR consideration, the Merger represents an equity valuation of approximately $2.25 billion.

3. On March 27, 2018, the Company filed a Form PREM14A Preliminary Proxy Statement (the "Proxy") with the SEC designed to convince A. Schulman stockholders to approve the Proposed Transaction. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the Company's financial projections; (ii) the valuation analyses conducted by the Company's financial advisor, CitiGroup Global Markets, Inc. ("Citi") to support its fairness opinion; and (iii) the narrative background before and after entry into the Merger Agreement.

4. The special meeting of A. Schulman stockholders to vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Therefore, it is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to A. Schulman's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**PARTIES**

6. Plaintiff is, and has been at all relevant times, a stockholder of A. Schulman.

7. A. Schulman is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 3637 Ridgewood Road, Fairlawn, Ohio, 44333. The Company's common stock is listed on the NASDAQ under the ticker symbol "SHLM." A. Schulman is named as a defendant herein solely for the purpose of providing full and complete relief.

8. Defendant Eugene R. Allspach has served as a director of the Company since May 2010.

9. Defendant David Birney has served as a director of the Company since 2006 and currently serves as the Lead Independent Director of the Company.

10. Defendant Carol S. Eicher has served as a director of the Company since September 7, 2017.

11. Defendant Joseph M. Gingo ("Gingo") has served as director of the Company since 2000 and currently serves as Chairman of the Board, Chief Executive Officer, and President.

12. Defendant Lee D. Meyer has served as a director of the Company since 2008.

13. Defendant James A. Mitarotonda has served as a director of the Company since 2005.

14. Defendant Ernest J. Novak has served as a director of the Company since 2003.

15. Defendant Kathleen M. Oswald has served as a director of the Company since 2016.

16. Defendant Allen A. Spizzo has served as a director of the Company since

September 2017.

17.     The Defendants described in ¶ 8 through ¶ 16 are referred to herein as the "Individual Defendants."

18.     Collectively, A. Schulman and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because A. Schulman is a corporation established under the laws of this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

22.     On February 15, 2018, the Company and LyondellBasell issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> HOUSTON and LONDON and AKRON, Ohio, Feb. 15, 2018 /PRNewswire/ -
>
> - Creates an industry-leading compounding business with combined revenue of $4.6 billion and adjusted EBITDA of $446 million over the last 12 months

- Expects to capture $150 million in run-rate cost synergies within two years, while being accretive to earnings within the first full year following the close, creating significant value for shareholders

- Doubles the size of LyondellBasell's existing compounding business and establishes a platform for future growth with reach into additional high-growth markets

- Complementary strengths and capabilities will provide customers with a full range of innovative products and end-to-end solutions

LyondellBasell (NYSE: LYB), one of the largest plastics, chemicals and refining companies in the world, and A. Schulman, Inc. (NASDAQ: SHLM), a leading global supplier of high-performance plastic compounds, composites and powders, today announced that they have entered into a definitive agreement under which LyondellBasell will acquire A. Schulman for a total consideration of $2.25 billion. The acquisition builds upon LyondellBasell's existing platform in this space to create a premier Advanced Polymer Solutions business with broad geographic reach, leading technologies and a diverse product portfolio.

"The acquisition of A. Schulman is a natural extension of our current platform. This combination will allow us to provide our customers with a wider range of innovative solutions while adding the ability to serve high-growth end markets beyond the automotive sector, such as packaging and consumer products, electronics and appliances, building and construction, and agriculture," said Bob Patel, Chief Executive Officer of LyondellBasell. "By leveraging our proven approach to operational, commercial and business excellence, the combined business will create significant value for our shareholders and customers."

"This transaction, which provides our shareholders with a compelling, immediate cash premium, represents the culmination of a robust assessment of strategic alternatives undertaken by our Board of Directors," said Joseph M. Gingo, Chairman, President and Chief Executive Officer of A. Schulman, Inc. "We are delighted to join forces with LyondellBasell, an industry leader we have admired for many years. LyondellBasell not only shares our commitment to meeting customers' demanding requirements, but with its scale and resources, the combined business will be better positioned to address a broader range of customer needs by integrating across applications and offering customers a wider range of solutions in attractive and growing markets. We also expect this combination to create significant opportunities for A. Schulman employees, whose professionalism and expertise will be integral to advancing LyondellBasell's vision, values and commitment to making a positive global impact."

**Transaction Terms**

Under the terms of the agreement, LyondellBasell will acquire A. Schulman for a total consideration of $2.25 billion. LyondellBasell will purchase 100 percent of A. Schulman common stock for $42 per share in cash and one contingent value right per share and assume outstanding debt and certain other obligations. In addition, the contingent value rights generally will provide a holder with an opportunity to receive certain net proceeds, if any are recovered, from certain ongoing litigation and government investigations relating to A. Schulman's Citadel and Lucent acquisitions.

LyondellBasell is using cash-on-hand to finance the acquisition. LyondellBasell expects to achieve $150 million in run-rate cost synergies within two years, primarily by leveraging its well-established approach to cost discipline and productivity, as well as its culture of operational, business and commercial excellence. Further, the acquisition is expected to be accretive to earnings within the first full year following close.

The combined businesses had revenues of $4.6 billion and adjusted EBITDA of $446 million over the last 12 months.

The proposed acquisition, which has been unanimously approved by the respective boards of LyondellBasell and A. Schulman, is subject to customary closing conditions, including regulatory approvals and approval by A. Schulman shareholders. The acquisition is expected to close in the second half of 2018.

**The Proxy Misleads A. Schulman Stockholders by Omitting Material Information**

23.     On March 27, 2018, the Company filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a public entity as evidenced by the Company's financial projections, the financial analyses conducted by Citi, and the existence of standstill provisions that would work to foreclose potentially superior alternatives to the Merger.

*Material Omissions Concerning the Company's Financial Projections*

24.     The Proxy discloses projections of the non-GAAP accounting metric, EBITDA, NOPAT, and Unlevered Free Cash Flow.

25. Providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

26. The Proxy fails to disclose the line items underlying EBITDA necessary to reconcile EBITDA to GAAP measures, including (i) net income; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) non-cash income or loss related to derivative instruments; (vi) non-cash long-term compensation expense; (vii) impairment losses, gains or losses on asset or business disposals or acquisitions; (viii) gains or losses on the repurchase, redemption or early retirement of debt; (ix) earnings from unconsolidated investments; and (x) distributions from unconsolidated investments.

27. The Proxy fails to disclose the line items underlying EBIT necessary to reconcile EBIT to GAAP measures, including (i) operating income; (ii) interest; and (iii) income taxes.

28. The Proxy fails to disclose the line items underlying NOPAT necessary to reconcile NOPAT to GAAP measures, including the impact of taxes on EBIT.

29. The Proxy also fails to disclose the line items underlying Unlevered Free Cash Flow necessary to reconcile it to GAAP measures, including (i) depreciation and amortization, (ii) capital expenditure, (iii) changes in net working capital, and (iv) other adjustments made to NOPAT.

30. Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads A. Schulman stockholders.

31. These projections were provided to Citi, LyondellBasell, and the Board, and used by Citi for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction. Because these analyses were presented to the

A. Schulman stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

### *Material Omissions Regarding Citi's Financial Analyses*

32. The Proxy describes Citi's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, A. Schulman's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to A. Schulman's stockholders.

33. With respect to Citi's *Comparable Companies Analysis*, the Proxy fails to disclose the individual multiples used by Citi for each of the companies included in the analysis. Without such information, A. Schulman's stockholders are unable to determine how the multiples used in determining A. Schulman's value compare to the other companies. As a result, stockholders are unable to assess whether A. Schulman utilized unreasonably low multiples, thereby rendering Citi's conclusion regarding the usefulness of such multiples meaningless.

34. Similarly, with respect to Citi's *Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples for each of the selected transactions analyzed by Citi, as well as any benchmarking analyses Citi performed for A. Schulman in relation to the transactions. Without such information, A. Schulman's stockholders are unable to determine how the multiples used in determining A. Schulman's value compare to the other companies. As a result,

stockholders are unable to assess whether Citi utilized unreasonably low multiples, thereby rendering Citi's conclusion regarding the usefulness of such multiples meaningless the implied share price ranges set forth in the analyses misleading.

*Material Omissions Regarding the Background of the Sales Process*

35. The Proxy also fails to disclose or misstate material information relating to the sale process leading up to the Proposed Transaction.

36. The Proxy fails to disclose whether the confidentiality agreements entered into with twenty-two parties between August and September 2017 contained standstill provisions, or so-called "don't-ask-don't-waive" ("DADW") standstill provision that presently preclude potential bidders from making a topping bid for the Company. Such information is material to A. Schulman stockholders as a reasonable A. Schulman stockholder would find it material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

37. DADW standstill provisions add an additional restriction to the typical standstill restriction that forbids a bidder from making another bid for the Company. DADW standstill provisions prevent a potential bidder from even privately requesting a waiver of the standstill provision from the Board, and thus prevent the communication of the existence of potentially superior offers. In agreeing to such a provision, the Board would have willfully blinded itself to offers that would provide stockholders with greater value than the Merger Consideration.

38. Furthermore, apart from the confidentiality agreement entered into with LyondellBasell, the Proxy omits any indication of whether any of the twenty-eight "Second Wave Bidders" entered into confidentiality agreements with the Company (apart from LyondellBasell), and if any of those confidentiality agreements contained standstill or DADW

standstill provisions.

39. If such confidentiality agreements do contain standstill or DADW standstill provisions, then as many as forty-nine potential acquirers could be forbidden from submitting a potentially superior alternative to A. Schulman's Board and stockholders.

40. The statements in the Proxy are misleading because they provide shareholders a materially incomplete and distorted picture of the sales process underlying the Proposed Transaction, the various alternatives available to (and considered by) defendants other than the Proposed Transaction, and the efforts taken (or not taken) to ensure that no conflicts of interest tainted the negotiation process, rendering it unfair to Plaintiff. Without this omitted information, 8point3 shareholders cannot make a fully-informed decision whether to vote to approve the Proposed Transaction

41. Defendants' failure to provide A. Schulman stockholders with the foregoing material information renders the statements in the *Background of the Merger* section of the Proxy false and/or materially misleading.

42. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein

43. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and A. Schulman**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. A. Schulman is liable as the issuer of these statements.

46. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

47. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

49. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of A. Schulman within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of A. Schulman and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

56. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: April 26, 2018

Respectfully submitted,

**O'KELLY ERNST & JOYCE, LLC**

By: /s/ *Ryan M. Ernst*
Ryan M. Ernst (No. 4788)
Daniel P. Murray (No. 5785)
901 Market Street
Suite 1000
Wilmington, DE 19801
Tel: (302) 778-4000
Fax: (302) 295-2873
rernst@oelegal.com
dmurray@oelegal.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
          etripodi@zlk.com

*Attorneys for Plaintiff*